The jury convicted Helena Tantillo because they believe she lied. And the evidence at trial that the government set as to materiality was that the FBI had to do further investigation to confirm or deny her misstatements. Cungies v. The United States made it very clear that conducting further investigation is not a sufficient basis for materiality. And we would offer two areas of discussion this morning related to the materiality questions. First, whether or not investigation can be a decision. And it's our position that investigation is a deliberative process, whereas decisions are final results. The second argument is that Ms. Tantillo's statements were not material because they could not have affected the FBI's decision to either arrest her or Price or Fain or Campbell or anybody else. Are you making your charge argument right now, or are you making your sufficiency argument? Are you making both at the same time? While we raised four arguments in the briefing, I'd like to focus on the sufficiency, which is the first. And I think I'll just focus solely on the first argument. Because that also impacted the definition of materiality, and that's why I'm just clarifying. Absolutely, and I think it's a great discussion if we start with sufficiency because it leads into do you charge the jury on the decision? But if we begin with this idea first about investigation, Gowdin tells us we first ask the two questions of purely historical fact, what statement was made and what decision the agency was trying to make, and then we look at that materiality question. So the first argument we have is that the official decision is not whether or not to conduct more investigation. The official decision is whether or not to prosecute Helena Tentiu as a co-conspirator. And here's how we know that. Cungies itself would have been decided differently if investigation was the critical factor. Cungies has these four misrepresentations on his visa application in Germany. He lies about his date of birth. He lies about his place of birth. He lies about his wartime occupation, and he lies about his wartime residence. The Office of Special Investigations from the DOJ apparently goes to the Soviet Union to take three depositions trying to determine if he was part of the 2,000 Lithuanians that were murdered in a war crime. And so if you're saying that investigation is enough for materiality, then Cungies should have been decided differently by Scalia. But I think that's actually what the Third Circuit had used, and the court in Cungies actually says no. You can't just use a basis for investigation. It's got to be on the actual result of whether to denaturalize him or not. And by holding that those four questions weren't relevant to the actual decision, Cungies effectively rebuts the government's argument in this case that just because the FBI had to do more work, more phone calls, or talk to other people, that that's enough to affect their decision. The other argument related to this is that Cungies and even this court's decision in Beer talk about a decision versus the decision. And Cungies just says we should not look to all these smaller little inconsequential decisions that might get to the final decision. Scalia, in a footnote, talks about whether someone lied to get a free English literacy course, which then lets them take the English literacy exam, which then lets them be a citizen or naturalize, and that we wouldn't hold those as material misrepresentations. So if that's the case, again, it looks to this idea of are we looking at the ultimate decision, which is what the FBI does? Do we arrest? Is there probable cause to arrest or not? And not the other steps of investigation. Now, the third reason we know investigation is not the decision is because now if this is true, then one more question in an interview now makes it material. One extra question to Ms. Tantillo. One other extra interview. Now the government has the unilateral authority to determine materiality. And I don't think the legislature or the Supreme Court in Cungies delegated the executive branch their sole power to determine materiality just by saying I'm going to choose to ask one more question or I'm going to choose to investigate more. If so, that means there's no point for the judicial branch to ever review materiality because now it's firmly in the hands of the executive branch. Stepping back. Counsel, I'm missing something, but I hear you talking about the decision that the prosecutor makes, not I. And I never would have indicted. I never would have prosecuted this lady. Never would have. But that wasn't my choice. So I don't think you have anything to gain by criticizing the prosecutor. Perhaps I'm misspeaking related to the FBI's arrest decision and not the government's decision to prosecute because it's our argument that the decision the FBI makes is whether they have probable cause to take the case to the government. And I apologize if I've misspoken because I'm not criticizing the government. I'm simply saying the decision that the FBI makes as a result of their investigation comes to that final part of do we indict her as a co-conspirator for bribery or do we not or do we do anything else? And it's not the government or the prosecutor's decision as to whether to prosecute her. So if I misspoke, I hope that clarifies well. But it sounds like you're talking about a decision about whether or not to indict. So that's what's so hard about this case because we know that the FBI and the U.S. Attorney's Office work in such close concert. We know that they talk and they discuss. But at the same time, there's clearly the investigative branch of the FBI which must come to a decision to take a case to the U.S. Attorney saying they believe they have probable cause, which is separate and apart from the U.S. Attorney's decision to then present to the grand jury. I think just from Cummings, it can't just be that investigation or wanting to do more investigation is the decision the FBI makes. I think it does come to a trigger point. I think it does come to the point where they feel like they can take the case to U.S. Attorney and say we have probable cause to indict her for this. And that's why in this case, of the two statements that she had moving to the second point, which might move or blend into the question that the judge is asking, is were either of those two statements material to an arrest decision? Helena Tantillo was the suspect. She wasn't a witness. The evidence in closing argument in the record, the evidence from both agents keep referring to her as being, quote, at the record of 904, instrumental in funneling money to Cathy Mealy who paid Commissioner Trice. At the record at 900, we were investigating a stream of benefits where companies hired a lobbyist and funneled money. In closing again at 905, she's trying to distance herself from the investigation. She's in a hole. She needs to quit digging. Both the government and their two agents keep referring to her as the focal point. So if she is the focal point, there's no testimony that the FBI was considering her as a witness and so the decision they're trying to make is whether to call her as a witness or the decision they're trying to make is whether to get other information. I think from the totality of the record, the entire focus is on whether or not she's a suspect and if so, the question is is whether those two statements can make an arrest decision. And if we look at both count one and count two, and we provided a timeline just to be able to... It doesn't actually have to make the arrest decision, does it? It just has to have a natural tendency to affect the arrest decision. That's right. They don't have to prove that this is what made us go and arrest. That's right. Absolutely. I agree. And when you look at all the cases, here's what's interesting about her case as compared to all the other cases in the circuits. Number one, she plays a very small role as a part of the company, as a minor possible co-conspirator. When you look at Abraham, when you look at Rogers, when you look at every other case, it's a person asking for a benefit one-on-one that they're not legally entitled to. What's unique when we look at the timeline is that the best benefit Helena Tintio gets is to stay silent. Everybody else in our line of 1001 cases is asking for something from the government that they're not legally entitled to. She's legally entitled to rely on the statute of limitations to say, that was back in 2004. But the statute of limitations doesn't apply to all of the counts because there's an ongoing conspiracy in 2010 and 11. So it's not in the record. The price and fame and the kneeling indictment is not. So the best argument that we have related to the statute is that we know that the objective of a conspiracy is accomplished once you get to the goal. The goal was for Dallas to be back in the bidding process. And so as it pertains to the investigation as to the bribery, her statements only relate to that. As to the tax evasion, money laundering, and everything else that's happening up in Dallas, I don't think she's part of that. And even if we look at the indictment, which the court could take judicial notice out of to the Lens Court, her limited basis is whether or not there was some money that's being funneled to Price in exchange for benefits. I didn't mean to get you off. You were about to talk about the statements themselves. Thank you so much. So the first statement about Count 1 is the increase in Campbell's pay is to make a charitable contribution. So as to Tantillo, our argument is it's outside the statute of limitations. There's nothing they could have done with that. Even in light of Brogan, there's nothing that says that the evidence about whether there was a charitable contribution is relevant to the charging decision or could have made a difference. And here's why. Unlike the cases for false claims where I'm saying I want something from the government I'm not entitled to, bribery is different. It requires two parties. So even if Helena Tantillo said, I hope this money was going to bribe Price, if Price never takes it, then how could that be relevant to the bribe? The government has to have the evidence, and we think they did in 2010, that he was violating the confidentiality provisions of the bidding process, that he was taking a ton of money and not reporting on his taxes, and he was doing all these things from lobbyists that had nothing to do with either one of Helena Tantillo's statements. So her statement alone, as compared to Brogan and Rogers and Oberheim, could not have affected the charging decision whatsoever because it necessarily requires Price or Neely or someone else to do something differently, which makes our case fit within a very, very tiny, narrow window of materiality cases under companies that are unlike many others. As to whether or not it could have affected, if we even look at, maybe we look at the materiality as to whether or not to arrest the other folks. Again, what's interesting in this case is anything she says about what she believes the money was going to is only toward her own culpability for committing bribery. So let's say, for example, if it's a one-on-one, she gives the money to Price directly, then her belief is relevant to the charging decision because now there's some evidence that she intended to bribe him. What's different about our case is there's Tantillo to Campbell to Neely to Price, and the evidence is uncontroverted that Price and Neely and Campbell are all getting money. So whether she believed, or what she believed as to whether it was going to charity or not, doesn't affect anyone down the line. Those decisions, the government had the records, had the checks, and nothing that she believed about why she was giving it were material to either the arrest of her or to them. But to the extent it didn't really, that's not what she really believed? To the extent, well, yeah, if the jury believed that, yeah, she was trying to corruptly influence him. So if we take the jury's verdict of saying no, she absolutely knew she was trying to influence him. I guess my point is that even if she believed that, Price still had to take it. Price still had to violate the non-confidentiality. Neely still had to give it to him. Campbell still, all those other steps had to have happened, and it didn't really matter what Tantillo did in related to the charging decisions for the FBI to make to either arrest them or some combination of them because there is enough of a separation, whereas all the other 1001 cases are, like in Rogers, an individual asking the FBI to investigate his ex-wife or in Brogan or anywhere else where one person is trying to ask one thing. The last argument that we have is if we know there's a bucket of material misrepresentations, then necessarily there is a bucket of immaterial representations or misrepresentations. And we think under Count 2 when we discuss memory triggers or when we discuss why you remembered something, that substantially is not a material misrepresentation. By saying what I remembered or why I remembered it, regardless of when it was, doesn't lead to any decision about to arrest her or Neely or Fain or anyone else. Even if it's intentionally to throw them off. Well, I think that's why materiality gives us, so let's say as compared to the Rogers case where it was intentionally to cause harm. I think materiality gives us that wiggle room that even if it was intentionally to throw them off, Scalia says in Cungies, it's still not material. And I think when we look at Cungies versus Rogers, which is a good example, Cungies is in 88, Rogers is in 84, I think that leads us to this conclusion that we want people to go to the FBI as witnesses. We don't want people to have to hire me or a criminal defense lawyer every time the FBI comes. Well, you might want that. You might want that too, right? But that means that we shouldn't be worried that every single misrepresentation... I see my time is up. No, go ahead, you can make it. It just means that whether I wore a red shirt or a blue shirt or whether I called this person from a hotel or not, we need to have wiggle room in the statute. If not, nobody ever talks or cooperates. And I think we need that. So you're saying that even if you tell fanciful stories and mislead and then those have to go be tracked down and it takes a lot of resources and manpower to track down a bunch of fanciful stories that are taking up the time where they could be looking at the real story, that that's not material. I hate saying that, because it's certainly a case-by-case basis as to whether it affects an arrest decision. And I think if you're within the statute of limitations for something else, you could be indicted for obstructing them. Well, they're in the statute of limitations for conspiracy in this case. So as to whether or not you can just mislead someone, my answer to your question is that there are situations where you could mislead someone intentionally  Okay, thank you. Thank you. Thank you. Good morning. Catherine Miller for the United States. May it please the court. A properly charged jury found Helena Tantello guilty based on a well-supported verdict record, and this court should affirm their verdict. With respect to the materiality issue, Tantello is trying to focus this court on a very narrow set of facts with an opinion drawn from a civil naturalization case. Congress doesn't stand for the proposition that an investigation or further developed investigation cannot be the basis for materiality. In Rogers, in fact, the Supreme Court was faced with the fact pattern that an individual had falsely made a report to the FBI and the Secret Service about his wife being kidnapped, which required the FBI and the Secret Service to do further investigation. In that case, the Supreme Court found that the false representations made by Mr. Rogers were immaterial. Congies is simply a decision that's fact-bound to the government's determination as to naturalization, but it didn't broadly hold that any time someone lies to the FBI and the FBI needs to confirm or disprove those facts, it cannot form the basis of a 1001 charge. Why were these statements material? Can you take each one separately? Yes. Your Honor, I think it would be helpful to look at the larger context of the investigation that the FBI was conducting. As Agent James and Agent Tai testified at trial, the FBI was investigating a 10-year conspiracy involving conduct by a company, Bearing Point, and individuals that work there, as well as other companies, and that's testimony that was at Ms. Tantillo's trial. This was a series of Dallas County contracts sought by various vendors. But what difference does it make, though, whether or not she thought the money was going to a charity or whether she thought it was going to bribe someone or whether she thought it was going for a birthday present? What difference does that make? Why is that material to this investigation? It's material because when they approached Ms. Tantillo, the facts that they had developed through the investigation was that Bearing Point or Ms. Tantillo had signed an agreement to increase a consultant, Mr. Campbell's, pay, and they had financial transactions showing that right around that time, Bearing Point was about to be eliminated, Campbell paid Kathy Neely, who was believed by the FBI to be the money person for Commissioner Price, and after Campbell got his increase in pay, he paid Neely and Neely paid Price right around the time that Bearing Point was saved from elimination on Commissioner Price's actions. We're aware of all that, but what difference does it make what she says the money is for? Even if she had just said right out it was for a bribe or she would have said, I mean, if she didn't say that, at that point, when all that's already coming to light, what difference does it make what she says the money's for? The point of the FBI's investigation is to determine the knowledge of people involved in these events and what evidence supports the charging or not charging. Obviously, the United States Attorney's Office has discretion in that, but the FBI presents that evidence for consideration and whether Ms. Tantillo would be testifying in support of what the investigation had shown that far or whether she was telling them something that they needed to look into further. Right, but she wasn't telling them something they needed to look into further, was she? Actually, yes, Your Honor. She volunteered a new theory of this money. That it was for charity, but wasn't it readily known that it wasn't? It was not trivial, Your Honor. The investigation showed the money went to Neely to Price. What Ms. Tantillo volunteered, and there's no evidence that suggested that she was telling the truth when she volunteered this information, but she deflected from what was under investigation to a whole new inquiry into a different commissioner, Commissioner Cantrell, who testified at trial that this is simply false. She implicated her former boss, saying that he was part of the charity idea. She directly contradicted another cooperating witness and co-defendant in the case, Christian Campbell, who had already told the government and the FBI that the money was destined for Neely. I mean, she opened up a whole new line of investigation. Was there another commissioner on the take? Did Campbell tell the truth when he told the government that the money was destined to Neely? Were her bosses or co-workers telling the truth? Had they previously lied during their interviews? So it created a dichotomy in the investigation, which set of facts is true and which can be supported by the evidence or not. So it was a distraction to their investigation. Ms. Tantillo would have this court believe that. So is it your position that every distraction is material? Only certain distractions, and what makes this distraction material? Well, there are two counts. One is the money to Neely. The second is the phone call. And if there's any doubt here, it was resolved by the jury as to whether it was material after listening to the two agents testify about all the additional investigation. They had to go investigate whether her call that she volunteered to the FBI was actually true or not. She was attempting to bolster her previous story that she volunteered. This is not a scenario where the FBI interviewed her thinking, well, there might be multiple explanations. They had a lot of evidence that suggested the money went to Neely, and they were trying to confirm that. Ms. Tantillo's explanation was a volunteer. She blurted out in that second interview that she suddenly remembered that she had this phone call with Mr. Reglico. Threw him under the bus, created a whole new avenue of investigation. And so not only was the FBI then faced with having to confirm or deny, is there another commissioner on the take, did this money go elsewhere, do we need to re-interview all these witnesses, which is what they did. But then they went back and looked through records. They went through Christian Campbell's bank records to determine whether he had, in fact, paid a charity. And they found one, and then they had to go run down what that charity was and was it related to Commissioner Cantrell. With respect to the second account, her lie that she knows that this conversation about charity took place was a call to Mr. Reglico, they had to go get phone records of Mr. Reglico and Ms. Tantillo, which in this day and age, thousands and thousands of pages, which was the testimony of trial. Agent Tai testified about having to review those and put an FBI analyst on it and run down phone numbers and make sure that this second lie that she told, the bolster, the first one, was actually not true so they could eliminate her alternate theory or explanation of the evidence they were looking at as a falsehood. And that's why it was material, and that's what the jury found. These two separate lies involved different evidence, which is why they're properly charged in separate counts, and they required substantial investigation by the FBI that would have otherwise had Ms. Tantillo said the money went to Neely, they moved on to other witnesses, and their investigation was not simply about Bearing Point. The testimony of trial, as I mentioned, was into other companies who had hired Neely, whose contracts were awarded, and so while they're having to interview people regarding those other companies, they then have this offshoot investigation involving Bearing Point that Ms. Tantillo herself generated. I don't know if the court recalls from the description of facts from the testimony, but in her first interview in August of 2013, she claims she simply didn't remember the reason for the bump in pay. In the second interview, before they could even question her at all, she volunteered, she blurted out that this phone call that she had with McGlicko was the reason why the bump in pay occurred. So it's entirely on Ms. Tantillo. She generated the lie, and then when she was interviewed again and given a third chance to come clean, she stuck with the same story and then embellished by making up this phone call, first from an incredible hotel room phone, which she, during that interview, admitted she lied, and then secondly by then saying it was her cell phone, Your Honor, and the jury properly found that that was material. With regard to, unless there are any other questions on that issue, I intended also to address the polygraph, the exclusion of Ms. Tantillo's offer to take a polygraph, and I wanted to clarify why the court decided that her attempt to bolster her own memory about what happened was intertwined with the exclusion of the evidence regarding her affair with Mr. Campbell. At trial, the government gave notice, or before trial, the government gave notice that it intended to ask Mr. Campbell about the very night that he and Ms. Tantillo came up with the idea to pay Kathy Neely and then funnel money to Commissioner Price, and that they decided to do so during a dinner where they decided to increase his pay for those two months. That night, had Campbell been able to testify about it, he would have said that they began an affair that lasted several months. The court excluded that testimony, and then in the middle of trial, Tantillo's counsel asked if he would be permitted outside the presence of the jury, asked the court if he could get into that Tantillo had agreed to take a polygraph, so he wanted to bolster these statements that she was making while at the same time prevent the government from introducing evidence that the jury could find would give her a very valid reason to remember the circumstances and the reason for the bump in pay because it happened on the same night that their affair started. So it was a 4-3 decision. It's not addressed in Tantillo's brief, but the court did not abuse its discretion in making that careful balance and excluding that evidence. But even if it did, Your Honors, the jury had overwhelming evidence of her guilt, her intent to mislead the FBI, the fact that she took the stand, was able to tell the jury her own version of the story, and the jury rejected that and likely would have said she took the stand and lied to us. She may have very well agreed to a polygraph and lied during that polygraph as well. Counsel, I think we have your argument. I mean, you have more time. You're not prohibited from continuing, but I think we have your argument. Thank you, Your Honor. We'll rest on our briefs and ask the court to affirm. Worth Carroll for Helena Tantillo. May it please the court. Materiality is specific. It's always tied to some ultimate question. It's a demanding standard, which is what the Supreme Court recently articulated in its False Claims Act case in Escobar decision. That clearly false statements, clearly false statements made, if they don't affect the government's decision in False Claims Act cases to ultimately pay, they're immaterial. This is what made Mr. Kangee's denaturalization proceeding misstatements, his falsifications and his visa applications immaterial, that they did not affect the ultimate decision that the denaturalization tribunal was trying to come to. That's why downright lies that don't affect a contracting party's decision to contract, why they're inactionable under common law fraud, why some lies under oath are inactionable and you can't be prosecuted under perjury laws. Okay. More specifically, the argument is that because of the alternative theory, that had to be investigated to decide who should be prosecuted, who should be charged, and that caused a lot of manpower to, as part of that event, tracking those down and deciding if the witnesses were telling the truth and whether they were going to proceed with those charges.  If it's deciding whether they're going to proceed with the charges that they think they're going to proceed with based upon new information, why isn't that material? Well, simple. The fact that the investigators had to do more investigation is not the standard. To decide if the people they're relying on are telling the truth or if there's really something else going on, that's relevant, certainly perhaps material, whether or not you can use these people as your star witnesses to say what was going on in this conspiracy. I agree it's relevant. We agree it's important. But I think those are different things than materiality to the ultimate decision. I think they're separate things than materiality. Well, counsel, I mean I've been listening to this argument about Kunji's and the ultimate decision. Kunji's doesn't explicitly define what an ultimate decision is, does it? Well, it talks about the decision, and it's interesting that there were— But it says decisions of the agency. And it also talks about— Isn't that what it said? I think it does mention that a couple times, Judge. And the decision about whether or not to go forward with an investigation is an agency decision, isn't it? I think it would have to be more specific than that, or else we run into this kind of parade of horribles where any investigative decision that changes the course of the investigation would be material. And for FBI investigations, in that respect, would make every misstatement material for FBI investigations, I believe. And that can't be the standard. It has to mean something, or else— Well, every misstatement doesn't lead to a decision to launch some full-scale investigation, does it? Well, it would be a reasonable investigator standard, so it could. I mean, under the standard, it said could it affect— have a natural tendency to affect the situation. So I think, in the abstract, any misstatement could affect an investigator's decision to— So your definition of the ultimate decision is what? For the FBI decision to arrest or not. And that's the only way a misstatement is material, is if it directly affects that decision? Yes, Judge. That's our position. And so, interestingly, in Ms. Tantillo's case, her misstatements, or at least the first one, the second one, about the phone I don't even want to address, but the first one, about why did you give money to Mr. Campbell, solely had to do with her mens rea. Only would affect her culpability. And so, to the extent— Would it also involve another, someone else? I don't think it could, because it is asking about her criminal culpability, about her mens rea, which I think is specific to her.  It seems different to me than, you know, did you give money to Price or did you give money to Neely? The investigators knew that. They were asking why she did it. But that didn't drag anybody else in through some fake charity allegations? I don't believe it caused— I do believe it caused more investigation. It's plain that that's true. But it could have dragged other people in that were not part of the conspiracy. Well, I don't believe so, because it seems to me that that bribery offense was completed in the statute of limitations that had long since run. And so anybody else related to that specific— The conspiracy to cover up and to— It wasn't the conspiracy about it. It was ongoing because it was a big cover-up and all of that. Well, I think maybe that's the greater conspiracy that the other three county commissioners were charged under. But Ms. Tantillo's case—and I'm sorry, I see my time is up. But Ms. Tantillo's case revolved a very discreet issue, a very discreet payment, which was not, I don't think, in the larger scheme. So as a result, we'd ask for the court to, so long as there's no other questions, to reverse the district court's judgment on the Rule 29 motion and render a judgment for the defense. Thank you. Okay, thank you.